UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD EDWARD McNABB, | ) 1:10-cv—01191-OWW-SKO-HC |
| | ) |
| Petitioner, | ) FINDINGS AND RECOMMENDATIONS RE: |
| | ) RESPONDENT'S MOTION TO DISMISS |
| | ) THE PETITION |
| v. | ) (DOCS. 21, 1, 7) |
| | ) |
| WARDEN YATES, et al., | ) FINDINGS AND RECOMMENDATIONS TO |
| | ) DISMISS THE PETITION WITH |
| Respondent. | ) PREJUDICE (DOCS. 1, 7), |
| | ) DISMISS PETITIONER'S MOTIONS AS |
| _____ | ) MOOT (DOCS. 23-25), AND |
| | DECLINE TO ISSUE A CERTIFICATE |
| | OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Pending before the Court is Respondent's motion to dismiss the petition, which was filed on February 17, 2011. Respondent contends that the petition is untimely and fails to set forth a cognizable claim. Petitioner filed an opposition to the motion on March 3, 2011, which was styled as a "Motion of Opposition." No reply was filed.

///

1    I.   <u>Proceeding by a Motion to Dismiss</u>

2    Respondent has filed a motion to dismiss the petition on the

3    ground that Petitioner filed his petition outside the one-year

4    limitation period provided for by 28 U.S.C. § 2244(d)(1).

5    Respondent also argues that Petitioner failed to state a

6    cognizable claim.

7    Rule 4 of the Rules Governing Section 2254 Cases (Habeas

8    Rules) allows a district court to dismiss a petition if it

9    "plainly appears from the face of the petition and any exhibits

10   annexed to it that the petitioner is not entitled to relief in

11   the district court...."

12   The Ninth Circuit has allowed respondents to file motions to

13   dismiss pursuant to Rule 4 instead of answers if the motion to

14   dismiss attacks the pleadings by claiming that the petitioner has

15   failed to exhaust state remedies or has violated the state's

16   procedural rules.  <u>See</u>, <u>e.g.</u>, <u>O'Bremski v. Maass</u>, 915 F.2d 418,

17   420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss

18   a petition for failure to exhaust state remedies); <u>White v.</u>

19   <u>Lewis</u>, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 to

20   review a motion to dismiss for state procedural default); <u>Hillery</u>

21   <u>v. Pulley</u>, 533 F.Supp. 1189, 1194 & n.12 (E.D.Cal. 1982) (same).

22   Thus, a respondent may file a motion to dismiss after the Court

23   orders the respondent to respond, and the Court should use Rule 4

24   standards to review a motion to dismiss filed before a formal

25   answer.  <u>See</u>, <u>Hillery</u>, 533 F. Supp. at 1194 & n.12.

26   In this case, Respondent's motion to dismiss addresses the

27   untimeliness of the petition pursuant to 28 U.S.C. 2244(d)(1).

28   The material facts pertinent to the motion are mainly found in

2

copies of the official records of state judicial proceedings which have been provided by Respondent and Petitioner, and as to which there is no factual dispute.  Because Respondent has not filed a formal answer, and because Respondent's motion to dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4.

II.  Background

Petitioner alleged that he was an inmate of Pleasant Valley State Prison (PVSP) serving a sentence of fifteen (15) years to life imposed by the Los Angeles Superior Court in August 1982 upon his conviction of second degree murder in violation of Cal. Pen. Code § 187.  (Pet. 3.)  Petitioner challenges the decision of California's Board of Parole Hearings (BPH) finding Petitioner unsuitable for parole after a hearing held on August 1, 2006, because Petitioner presented a danger to society if released. (Id. at 16.)

Petitioner raises the following claims in the petition:  1) the BPH abused its discretion by concluding that Petitioner would pose an unreasonable risk of danger to society, 2) there was no evidence of Petitioner's callous disregard for human life, 3) the BPH's continued denial of release on parole constituted cruel and unusual punishment, and 4) the BPH's continued denial of parole violated the Ex Post Facto Clause.  (Id. at 6-7.)  Petitioner contends that the evidence of his rehabilitation that was before the BPH actually supported a finding that if released, Petitioner would not present an unreasonable risk of danger to society.

3

1   (Doc. 7, 4.)

2       The transcript of the hearing held on August 1, 2006,

3   reflects that Petitioner attended the hearing with counsel, was

4   given an opportunity to correct and clarify the record, discussed

5   with the BPH various factors of parole suitability, made a

6   personal statement in favor of parole in addition to his

7   counsel's statement, and was present when the BPH announced its

8   decision and the reasoning underlying it.  (Mot., Ex. 1, doc. 21-

9   1, 2, 5, 10, 13, 15-43, 44-47, 48-57.)  The BPH's reasons for

10  concluding that Petitioner posed an unreasonable danger to public

11  safety and should not receive consideration for release again for

12  four years included the especially violent and cruel commitment

13  offense and Petitioner's criminal history, abuse of drugs and

14  resultant psychiatric problems, limited programming and

15  disciplinary history during incarceration, failure to develop a

16  marketable skill, and lack of residential plans for release.

17  (Id. at 48-57.)

18      On June 18, 2009, Petitioner filed a petition for writ of

19  habeas corpus in the Los Angeles Superior Court, which denied the

20  petition on October 16, 2009, on the ground that there was some

21  evidence to support the BPH's findings concerning the commitment

22  offense, including Petitioner's significant, criminal and serious

23  misconduct during incarceration, and the inadequacy of

24  Petitioner's rehabilitative efforts.  (Mot., Ex. 2, doc. 21-2,

25  60-62.)

26      Petitioner filed a petition for writ of habeas corpus in the

27  California Court of Appeal, Second Appellate District, on

28

November 11, 2009,[1] which the court denied on December 2, 2009. (Mot., Exs. 3-4, doc. 21-2, 64-75; doc. 21-1, 98.)  Thereafter, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court on December 15, 2009.  (Mot., Ex. 5, doc. 21-1, 77-89.)

Petitions for writ of habeas corpus filed in this Court were dismissed without prejudice for failure to exhaust state court remedies on February 25, 2008 (petition filed on October 22, 2007, in case no. 1:07-cv-01535-AWI-SMS-HC) and March 4, 2008 (petition filed on February 4, 2008, in case no. 1:08-cv-00173-LJO-SMS-HC).  (Mot., Ex. 5, doc. 21-1, 90-91; ex. 7, doc. 21-2, 138-42; ex. 8, doc. 21-1, 143-45.)

On January 22, 2009, the United States Court of Appeals for the Ninth Circuit denied as unnecessary an application for authorization to bring a successive § 2254 petition.  (Id. at 92-93; ex. 7, doc. 21-1, 138-40.)  The denial was specifically without prejudice to Petitioner's renewing his habeas petition before the District Court.  Id.

On June 18, 2009, Petitioner filed a second petition for writ of habeas corpus in the Superior Court, which the court denied on October 16, 2009, on the ground that the record

---

[1] Under the mailbox rule, a prisoner's pro se habeas petition is "deemed filed when he hands it over to prison authorities for mailing to the relevant court."  Huizar v. Carey, 273 F.3d 1220, 1222 (9th Cir. 2001); Houston v. Lack, 487 U.S. 266, 276 (1988). The mailbox rule applies to federal and state petitions alike.  Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (citing Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th. Cir. 2003), and Smith v. Ratelle, 323 F.3d 813, 816 n.2 (9th Cir. 2003)).  Only some of the exhibits filed by Respondent contain the petitions, so some filing dates are reflected only in the orders denying the petitions.  Thus, it may be the Petitioner actually filed the petitions a few days earlier than indicated in the respective state courts' denial orders.  However, in view of the timing of the filings, it does not appear that any discrepancy would affect the analysis or result in the present case.

contained some evidence supporting the BPH's findings.  (Id. at 94-97.)

On November 17, 2009, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, which the court denied on December 2, 2009.  (Id. at 98.)

Petitioner filed a petition for writ of habeas corpus in the California Supreme Court on December 15, 2009, which the court denied on June 9, 2010.  (Exs. 5-6, doc. 21-1, 87, 78-137.)  The petition in the present case was filed on June 14, 2010.[2]

III.  Statute of Limitations

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The AEDPA applies to all petitions for writ of habeas corpus filed after the enactment of the AEDPA.  Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), cert. denied, 118 S.Ct. 586 (1997).

Because Petitioner filed his petition for writ of habeas corpus on June 14, 2010, the AEDPA applies to the petition.

The AEDPA provides a one-year period of limitation in which a petitioner must file a petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, subdivision (d) reads:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.

---

[2] Petitioner's declaration of proof of service of the petition by mail was dated June 14, 2010; the post mark on the envelope bears the date of June 16, 2010.  In Campbell v. Henry, the court declined to decide whether in determining the date of mailing, it was more appropriate to use the date on the proof of service or the date of the postmark.  Campbell v. Henry, 614 F.3d 1056, 1059 n.2 (9th Cir. 2010).  Because in the present case the proof of service is declared to be true under penalty of perjury and appears to reflect the time when Petitioner deposited the petition in the mail, the Court will accept the date on the proof of service.

The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The one-year limitation period of § 2244 applies to habeas petitions brought by persons in custody pursuant to state court judgments who challenge administrative decisions, such as the decisions of state prison disciplinary authorities. Shelby v. Bartlett, 391 F.3d 1061, 1063, 1065-66 (9th Cir. 2004). However, § 2244(d)(1)(A) is inapplicable to administrative decisions; rather, it is § 2244(d)(1)(D) that applies to petitions challenging such decisions. Redd v. McGrath, 343 F.3d 1077, 1081-82 (9th Cir. 2003) (parole board determination). Thus, the point at which the statute begins to run is the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(D); Redd v. McGrath, 343 F.3d at 1082. In Redd v.

7

McGrath, the court concluded that the factual predicate of the habeas claims concerning the denial of parole was the parole board's denial of the prisoner's administrative appeal.  Id. at 1082.

In Shelby and Redd, the pertinent date was the date on which notice of the decision was received by the petitioner. Thus, the statute of limitations was held to have begun running the day after notice of the decision was received.  Shelby v. Bartlett, 391 F.3d 1061, 1066; Redd, 343 F.3d at 1082.

Here, Petitioner was present when the BPH announced its decision; thus, Petitioner received notice of the initial BPH panel decision on August 1, 2006.  However, the transcript of the decision reflects the following text after the conclusion of the hearing:

> PAROLE DENIED FOUR YEARS
> THIS DECISION WILL BE FINAL ON:  Nov 29, 2006
> YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT
> DATE, THE DECISION IS MODIFIED.
> RONALD MCNABB C-52916 DECISION  PAGE 10  8/1/06

(Mot., doc. 21-1, 57.)

Thus, November 29, 2006, is the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.  The statute thus began running on the next day, November 30, 2006, and absent any tolling, Petitioner had through November 29, 2007, to file his petition here.  Fed. R. Civ. P. 6(a); Patterson v. Stewart, 251 F.3d 1243, 1245-46 (9th Cir. 2001) (holding analogously that the correct method for computing the running of the one-year grace period after the enactment of AEDPA is pursuant to Fed. R. Civ. P. 6(a), in which the day upon which the triggering event

occurs is not counted).

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. Once a petitioner is on notice that his habeas petition may be subject to dismissal based on the statute of limitations, he has the burden of demonstrating that the limitations period was sufficiently tolled by providing the pertinent facts, such as dates of filing and denial. Smith v. Duncan, 297 F.3d 809, 814-15 (9th Cir. 2002), abrogation on other grounds recognized by Moreno v. Harrison, 245 Fed. Appx. 606 (9th Cir. 2007).

Here, Petitioner's first state habeas petition was filed on June 18, 2009, long after the expiration of the one-year limitation period at the end of November 2007. A state petition filed after the expiration of the one-year limitation period does not serve to toll or re-initiate the running of the limitations period under 28 U.S.C. § 2244(d)(2). Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003). Accordingly, Petitioner has not shown a basis for tolling the running of the limitations period pursuant to § 2244(d)(2).

Petitioner contends that the running of the statute was equitably tolled. The one-year limitations period of § 2244 is subject to equitable tolling where the petitioner has been diligent, and extraordinary circumstances, such as the egregious misconduct of counsel, have prevented the petitioner from filing a timely petition. Holland v. Florida, – U.S. –, 130 S.Ct. 2549, 2560 (2010). The petitioner must show that the extraordinary

1  circumstances were the cause of his untimeliness and that the
2  extraordinary circumstances made it impossible to file a petition
3  on time.  Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009).
4  The diligence required for equitable tolling is reasonable
5  diligence, not "maximum feasible diligence."  Holland v. Florida,
6  130 S.Ct. at 2565.

7       "[T]he threshold necessary to trigger equitable tolling
8  [under AEDPA] is very high, lest the exceptions swallow the
9  rule."  Spitsyn v. Moore, 345 F.3d 796, 799 (quoting Miranda v.
10  Castro, 292 F.3d 1063, 1066 (9th Cir. 2002)).

11       Petitioner alleges generally that the statute was equitably
12  tolled by his exhaustion of his claims at the state and then the
13  federal levels.  Petitioner contends that when the first two
14  federal petitions were dismissed for failure to exhaust, he
15  returned to state court and filed a petition in the Superior
16  Court on June 18, 2009; each successive petition for relief
17  thereafter continued to toll the statute.  (Opp., doc. 22, 1.)

18       Petitioner's allegations appear to relate more to statutory
19  tolling pursuant to § 2244(d)(2) than to equitable tolling.  The
20  filing of a federal petition does not serve to toll the statute
21  of limitations pursuant to § 2244(d)(2).  Duncan v. Walker, 533
22  U.S. 167, 172 (2001).  Thus, during the pendency of Petitioner's
23  two earlier federal petitions, the statute continued to run.

24       Further, it is demonstrated by the record that Petitioner
25  did not file his first state petition for collateral relief until
26  after the one-year limitation period had expired.  Finally,
27  Petitioner does not point to any extraordinary circumstances that
28  prevented him from filing a timely petition.  The Court concludes

10

1  that Petitioner did not demonstrate that the limitations period
2  was equitably tolled.

3       In summary, the Court concludes that the petition was
4  untimely.  Accordingly, it will be recommended that Respondent's
5  motion to dismiss the petition as untimely be granted, and that
6  the petition be dismissed as untimely.

7       IV.  <u>Failure to State a Cognizable Claim</u>

8       Respondent argues that the petition should be dismissed
9  because Petitioner failed to state a claim entitling him to
10 relief in a proceeding pursuant to 28 U.S.C. § 2254.

11      A district court may entertain a petition for a writ of
12 habeas corpus by a person in custody pursuant to the judgment of
13 a state court only on the ground that the custody is in violation
14 of the Constitution, laws, or treaties of the United States. 28
15 U.S.C. §§ 2254(a), 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362,
16 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. –, –, 131 S.Ct. 13,
17 16 (2010) (per curiam).

18      A.  <u>Due Process Claim Based on the Evidence</u>

19      The Supreme Court has characterized as reasonable the
20 decision of the Court of Appeals for the Ninth Circuit that
21 California law creates a liberty interest in parole protected by
22 the Fourteenth Amendment Due Process Clause, which in turn
23 requires fair procedures with respect to the liberty interest.
24 <u>Swarthout v. Cooke</u>, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011).

25      However, the procedures required for a parole determination
26 are the minimal requirements set forth in <u>Greenholtz v. Inmates</u>
27
28

1   of Neb. Penal and Correctional Complex, 442 U.S. 1, 12 (1979).[3]

2   Swarthout v. Cooke, 131 S.Ct. 859, 862.  In Swarthout, the Court

3   rejected inmates' claims that they were denied a liberty interest

4   because there was an absence of "some evidence" to support the

5   decision to deny parole.  The Court stated:

6           There is no right under the Federal Constitution
            to be conditionally released before the expiration of
7           a valid sentence, and the States are under no duty
            to offer parole to their prisoners.  (Citation omitted.)
8           When, however, a State creates a liberty interest,
            the Due Process Clause requires fair procedures for its
9           vindication–and federal courts will review the
            application of those constitutionally required procedures.
10          In the context of parole, we have held that the procedures
            required are minimal.  In Greenholtz, we found
11          that a prisoner subject to a parole statute similar
            to California's received adequate process when he
12          was allowed an opportunity to be heard and was provided
            a statement of the reasons why parole was denied.
13          (Citation omitted.)

14  Swarthout, 131 S.Ct. 859, 862.  The Court concluded that the

15  petitioners had received the process that was due as follows:

16          They were allowed to speak at their parole hearings
            and to contest the evidence against them, were afforded
17          access to their records in advance, and were notified
            as to the reasons why parole was denied....

18
            That should have been the beginning and the end of
19          the federal habeas courts' inquiry into whether

20

21          [3] In Greenholtz, the Court held that a formal hearing is not required
    with respect to a decision concerning granting or denying discretionary
    parole; it is sufficient to permit the inmate to have an opportunity to be
22  heard and to be given a statement of reasons for the decision made.  Id. at
    16.  The decision maker is not required to state the evidence relied upon in
23  coming to the decision.  Id. at 15-16.  The Court reasoned that because there
    is no constitutional or inherent right of a convicted person to be released
24  conditionally before expiration of a valid sentence, the liberty interest in
    discretionary parole is only conditional and thus differs from the liberty
25  interest of a parolee.  Id. at 9.  Further, the discretionary decision to
    release one on parole does not involve retrospective factual determinations,
    as in disciplinary proceedings in prison; instead, it is generally more
26  discretionary and predictive, and thus procedures designed to elicit specific
    facts are unnecessary.  Id. at 13.  In Greenholtz, the Court held that due
27  process was satisfied where the inmate received a statement of reasons for the
    decision and had an effective opportunity to insure that the records being
28  considered were his records, and to present any special considerations
    demonstrating why he was an appropriate candidate for parole.  Id. at 15.

[the petitioners] received due process.
Swarthout, 131 S.Ct. at 862.  The Court in Swarthout expressly noted that California's "some evidence" rule is not a substantive federal requirement, and correct application of California's "some evidence" standard is not required by the federal Due Process Clause.  Id. at 862-63.

Here, in arguing that there was an absence of evidence to support the BPH's denial of parole, Petitioner asks this Court to engage in the very type of analysis foreclosed by Swarthout. Petitioner does not state facts that point to a real possibility of constitutional error or that otherwise would entitle Petitioner to habeas relief because California's "some evidence" requirement is not a substantive federal requirement.  Review of the record for "some evidence" to support the denial of parole is not within the scope of this Court's habeas review under 28 U.S.C. § 2254.

Insofar as Petitioner argues that the BPH abused its discretion in denying parole, Petitioner appears to be relying on state law concerning the determination of parole suitability.  To the extent that Petitioner's claim or claims rest on state law, they are not cognizable on federal habeas corpus.  Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  Wilson v. Corcoran, 562 U.S. — , 131 S.Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Alleged errors in the application of state law are not cognizable in federal habeas corpus.  Souch v. Schiavo, 289 F.3d 616, 623 (9th Cir. 2002).
///

A petition for habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted.  <u>Jarvis v. Nelson</u>, 440 F.2d 13, 14 (9th Cir. 1971).

Here, the allegations in the petition reveal that Petitioner attended the parole suitability hearing, made statements to the BPH, and received a statement of reasons for the decision of the BPH.  Thus, Petitioner's own allegations and the undisputed record of the parole proceedings establish that he had an opportunity to be heard and received a statement of reasons for the decision in question.  It therefore does not appear that Petitioner could state a tenable due process claim.

Accordingly, it will be recommended that with respect to Petitioner's due process claim, Respondent's motion to dismiss be granted, and the petition be dismissed without leave to amend.

### B.   Cruel and Unusual Punishment

Petitioner alleges generally that the continued denial of parole constituted cruel and unusual punishment.  (Pet. 7.)

It is established that there is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the states are under no duty to offer parole to their prisoners.  <u>Swarthout v. Cooke</u>, 562 U.S. –, 131 S.Ct. 859, 862 (2011).  A criminal sentence that is "grossly disproportionate" to the crime for which a defendant is convicted may violate the Eighth Amendment.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 72 (2003); <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring); <u>Rummel v. Estelle</u>, 445 U.S. 263, 271 (1980).  Outside of the capital punishment context, the Eighth

Amendment prohibits only sentences that are extreme and grossly disproportionate to the crime.  United States v. Bland, 961 F.2d 123, 129 (9th Cir. 1992) (quoting Harmelin v. Michigan, 501 U.S. 957, 1001, (1991) (Kennedy, J., concurring)).  Such instances are "exceedingly rare" and occur in only "extreme" cases.  Lockyer v. Andrade, 538 U.S. at 72-73; Rummel, 445 U.S. at 272.  So long as a sentence does not exceed statutory maximums, it will not be considered cruel and unusual punishment under the Eighth Amendment.  See United States v. Mejia-Mesa, 153 F.3d 925, 930 (9th Cir. 1998); United States v. McDougherty, 920 F.2d 569, 576 (9th Cir. 1990).

In California, Petitioner's offense, second degree murder, is generally punished by imprisonment in the state prison for a term of fifteen (15) years to life.  Cal. Pen. Code § 190(a). Pursuant to California law, it is established that an indeterminate life sentence is in legal effect a sentence for the maximum term of life.  People v. Dyer, 269 Cal.App.2d 209, 214 (1969).  Generally, a convicted person serving an indeterminate life term in state prison is not entitled to release on parole until he is found suitable for such release by the Board of Parole Hearings (previously, the Board of Prison Terms).  Cal. Pen. Code § 3041(b); Cal. Code of Regs., tit. 15, § 2402(a). Under California's Determinate Sentencing Law, an inmate such as Petitioner who is serving an indeterminate sentence for murder may serve up to life in prison, but he does not become eligible for parole consideration until the minimum term of confinement is served.  In re Dannenberg, 34 Cal.4th 1061, 1078 (2005).  The actual confinement period of a life prisoner is determined by an

1  executive parole agency.  Id. (citing Cal. Pen. Code § 3040).

2      Here, Petitioner's sentence of fifteen (15) years to life

3  does not exceed the statutory maximum.  Further, a sentence of

4  fifty years to life for murder with use of a firearm is not

5  grossly disproportionate.  Plasencia v. Alameida, 467 F.3d 1190,

6  1204 (9th Cir. 2006).  Accordingly, Petitioner has not stated

7  facts that would entitle him to relief in a proceeding pursuant

8  to § 2254 under the Eighth Amendment's prohibition against cruel

9  and unusual punishment.

10      In view of the pertinent state statutory scheme, it does not

11  appear that Petitioner could allege a tenable cruel and unusual

12  punishment claim.  Therefore, it will be recommended that

13  Petitioner's cruel and unusual punishment claim be dismissed

14  without leave to amend.

15          C.  Ex Post Facto Claim

16      Petitioner alleges generally that the continued denial of

17  parole constitutes a violation of the Eighth Amendment's Ex Post

18  Facto Clause.  (Pet. 7, 17.)  The Court understands this argument

19  to be based on the Ex Post Facto Clause and not the Eighth

20  Amendment.

21      Petitioner has not alleged specific facts in support of this

22  claim.  Notice pleading is not sufficient for petitions for

23  habeas corpus; rather, the petition must state facts that point

24  to a real possibility of constitutional error.  Habeas Rule 4,

25  Advisory Committee Notes, 1976 Adoption; O'Bremski v. Maass, 915

26  F.2d 418, 420 (9th Cir. 1990) (quoting Blackledge v. Allison, 431

27  U.S. 63, 75 n.7 (1977)).  Allegations in a petition that are

28  vague, conclusional, or palpably incredible, and that are

unsupported by a statement of specific facts, are insufficient to warrant relief and are subject to summary dismissal.  <u>Jones v. Gomez</u>, 66 F.3d 199, 204-05 (9th Cir. 1995); <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994).  Petitioner's general allegations are, therefore, subject to dismissal.

In view of the four-year denial of parole, however, Petitioner may be basing his claim on the BPH's application to Petitioner, whose crime was committed in 1982, of California's Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law," which on November 4, 2008, effected an amendment of Cal. Pen. Code § 3041.5(b)(3) that resulted in a lengthening of the periods between parole suitability hearings.

The Constitution provides, "No State shall... pass any... ex post facto Law."  U.S. Const. art I, § 10.  The Ex Post Facto Clause prohibits any law which: 1) makes an act done before the passing of the law, which was innocent when done, criminal; 2) aggravates a crime and makes it greater than it was when it was committed; 3) changes the punishment and inflicts a greater punishment for the crime than when it was committed; or 4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed.  <u>Carmell v. Texas</u>, 529 U.S. 513, 522 (2000).  Application of a state regulation retroactively to a defendant violates the Ex Post Facto Clause if the new regulations create a "sufficient risk" of increasing the punishment for the defendant's crimes.  <u>Himes v. Thompson</u>, 336 F.3d 848, 854 (9th Cir. 2003) (citing <u>Cal. Department of Corrections v. Morales</u>, 514 U.S. 499, 509 (1995)).  When the rule

or statute does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule. Garner v. Jones, 529 U.S. 244, 250, 255 (2000).

The Court notes that Petitioner has not alleged any facts that would even suggest that retroactive application of Proposition 9 resulted in a longer period of incarceration.

Further, previous amendments to Cal. Pen. Code § 3041.5, which initiated longer periods of time between parole suitability hearings, have been upheld against challenges that they violated the Ex Post Facto Clause. See, e.g., California Department of Corrections v. Morales, 514 U.S. 499, 509 (1995); Watson v. Estelle, 886 F.2d 1093, 1097-98 (9th Cir. 1989). Similarly, a state law permitting the extension of intervals between parole consideration hearings for all prisoners serving life sentences from three to eight years does not violate the Ex Post Facto Clause where expedited parole review was available upon a change of circumstances or receipt of new information warranting an earlier review, and where there was no showing of increased punishment. Garner v. Jones, 529 U.S. at 249. Under such circumstances, there was no significant risk of extending a prisoner's incarceration. Id.

In Gilman v. Schwarzenegger, 638 F.3d 1101 (9th Cir. 2011), the Ninth Circuit reversed a grant of injunctive relief to plaintiffs in a class action seeking to prevent the board from enforcing Proposition 9's amendments that defer parole

1  consideration.  The court noted that the changes wrought by

2  Proposition 9 were noted to be more extensive than those before

3  the Court in Morales and Garner; however, advanced hearings,

4  which would remove any possibility of harm, were available upon a

5  change in circumstances or new information.  Id. at 1108-09.  The

6  Court concluded that in the absence of facts in the record from

7  which it might be inferred that Proposition 9 created a

8  significant risk of prolonging Plaintiffs' incarceration, the

9  plaintiffs had not established a likelihood of success on the

10  merits on the ex post facto claim.  Id. at 1110-11.

11      This Court may take judicial notice of court records.  Fed.

12  R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333

13  (9th Cir. 1993); Valerio v. Boise Cascade Corp., 80 F.R.D. 626,

14  635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir. 1981).

15  The Court takes judicial notice of the docket and specified

16  orders in the class action pending in this district, Gilman v.

17  Fisher, 2:05-cv-00830-LKK-GGH, including the order granting

18  motion for class certification filed on March 4, 2009 (Doc. 182,

19  9:7-15).  The docket indicates that the Gilman class is made up

20  of California state prisoners who 1) have been sentenced to a

21  term that includes life, 2) are serving sentences that include

22  the possibility of parole, 3) are eligible for parole, and 4)

23  have been denied parole on one or more occasions.  The docket

24  further reflects that the Ninth Circuit affirmed the order

25  certifying the class.  (Docs. 257, 258.)

26      The Court also takes judicial notice of the order of March

27  4, 2009, in which the court described the case as including

28  challenges to Proposition 9's amendments to Cal. Pen. Code §

3041.5 based on the Ex Post Facto Clause, and a request for injunctive and declaratory relief against implementation of the changes.  (Doc. 182, 5-6.)

Although Petitioner ultimately seeks release from custody (pet. 35), resolution of Petitioner's claim might well involve the scheduling of Petitioner's next suitability hearing and the invalidation of state procedures used to deny parole suitability, matters removed from the fact or duration of confinement.  Such types of claims have been held to be cognizable under 42 U.S.C. § 1983 as claims concerning conditions of confinement.  Wilkinson v. Dotson, 544 U.S. 74, 82 (2005).  Thus, they may fall outside the core of habeas corpus relief.  See, Preiser v. Rodriguez, 411 U.S. 475, 485-86 (1973); Nelson v. Campbell, 541 U.S. 637, 643 (2004); Muhammad v. Close, 540 U.S. 749, 750 (2004).

Further, Petitioner's requested relief overlaps with the relief requested in the Gilman class action.  A plaintiff who is a member of a class action for equitable relief from prison conditions may not maintain an individual suit for equitable relief concerning the same subject matter.  Crawford v. Bell, 599 F.2d 890, 891-92 (9th Cir. 1979).  It is contrary to the efficient and orderly administration of justice for a court to proceed with an action that would possibly conflict, or interfere, with the determination of relief in another pending action, which is proceeding and in which the class has been certified.

Here, Petitioner's own allegations reflect that he qualifies as a member of the class in Gilman.  The court in Gilman has jurisdiction over same subject matter and may grant the same

1  relief.  A court has inherent power to control its docket and the

2  disposition of its cases with economy of time and effort for both

3  the court and the parties.  <u>Landis v. North American Co.,</u> 299

4  U.S. 248, 254-255 (1936); <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1260

5  (9th Cir. 1992).  In the exercise of its inherent discretion,

6  this Court concludes that dismissal of Petitioner's ex post facto

7  claim in this action is appropriate and necessary to avoid

8  interference with the orderly administration of justice.  <u>Cf.</u>,

9  <u>Crawford v. Bell</u>, 599 F.2d 890, 892-93; <u>see</u> <u>Bryant v. Haviland</u>,

10  2011 WL 23064, *2-*5 (E.D.Cal. Jan. 4, 2011).

11        In view of the allegations of the petition and the pendency

12  of the <u>Gilman</u> class action, amendment of the petition with

13  respect to such an ex post facto claim would be futile.

14  Accordingly, it will be recommended that Petitioner's ex post

15  facto claim be dismissed without leave to amend.

16        V.   <u>Miscellaneous Motions</u>

17        After the filing of the motion to dismiss, Petitioner filed

18  a motion for summary judgment in which he asked the Court to

19  grant him the writ of habeas corpus.  (Doc. 23, filed March 24,

20  2011.)  He then filed a motion for a transcript of his trial on

21  April 4, 2011 (doc. 24), and a motion for the Court to grant his

22  petition (doc. 25, filed April 26, 2011).

23        In view of the recommendation that the entire petition be

24  dismissed with prejudice, it will be further recommended that

25  Petitioner's motions be dismissed as moot.

26        VI.  <u>Certificate of Appealability</u>

27        Unless a circuit justice or judge issues a certificate of

28  appealability, an appeal may not be taken to the Court of Appeals

from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).  A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right.  § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in any procedural ruling.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  <u>Id.</u>  It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 338.

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

1    Here, it does not appear that reasonable jurists could

2  debate whether the petition should have been resolved in a

3  different manner.   Petitioner has not made a substantial showing

4  of the denial of a constitutional right.   Accordingly, it will be

5  recommended that the Court decline to issue a certificate of

6  appealability.

7    VII.   <u>Recommendations</u>

8    In summary, it is concluded that the petition was untimely,

9  and that Petitioner has failed to state a claim cognizable in

10  this proceeding.

11    Accordingly, it is RECOMMENDED that:

12    1)   Respondent's motion to dismiss the petition be GRANTED;

13  and

14    2)   The petition be DISMISSED with prejudice; and

15    3)   Petitioner's motions for summary judgment, a copy of his

16  trial transcript, and to grant the petition be DISMISSED as moot;

17  and

18    4)   The Court DECLINE to issue a certificate of

19  appealability.

20    These findings and recommendations are submitted to the

21  United States District Court Judge assigned to the case, pursuant

22  to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of

23  the Local Rules of Practice for the United States District Court,

24  Eastern District of California.   Within thirty (30) days after

25  being served with a copy, any party may file written objections

26  with the Court and serve a copy on all parties.   Such a document

27  should be captioned "Objections to Magistrate Judge's Findings

28  and Recommendations."   Replies to the objections shall be served

1  and filed within fourteen (14) days (plus three (3) days if
2  served by mail) after service of the objections.  The Court will
3  then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
4  636 (b)(1)(C).  The parties are advised that failure to file
5  objections within the specified time may waive the right to
6  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d
7  1153 (9th Cir. 1991).

8

9  IT IS SO ORDERED.

10 **Dated:    June 23, 2011**                    /s/ Sheila K. Oberto
                                    UNITED STATES MAGISTRATE JUDGE